UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KRISTINE BENDER,

        Plaintiff,

    v.                                                                  20-CV-1662-LJV-LGF
                                                                           DECISION & ORDER
LOWE'S HOME CENTERS, INC.,

        Defendant.

---

On August 19, 2020, the plaintiff, Kristine Bender, commenced this action in New York State Supreme Court, Erie County, alleging that in December 2019, she slipped and fell on a patch of snow or ice in the parking lot of a Lowe's store in Orchard Park, New York. Docket Item 1-2 at 4-6 (complaint). *Id.* She sued Lowe's Home Centers, LLC ("Lowe's"), for negligence related to its alleged failure to properly inspect and maintain the store premises. *Id.* Lowe's then removed the action to this Court. Docket Item 1.

After this Court referred the case to United States Magistrate Judge Leslie G. Foschio, Docket Item 3, Lowe's moved for summary judgment on the ground that Bender's claims "are barred by the storm-in-progress doctrine." Docket Item 28; *see* Docket Item 28-5 at 2-3. On January 26, 2023, Bender responded, Docket Item 30, and on February 8, 2023, Lowe's replied, Docket Item 31.

For the reasons that follow, Lowe's motion for summary judgment is denied.

## **BACKGROUND**[1]

For purposes of this motion, both sides generally agree about Bender's experience on the morning of December 11, 2019. When Bender arrived at the Orchard Park Lowe's store between 9:30 a.m. and 10:00 a.m. that day, Docket Item 28-3 at ¶¶ 1-2; Docket Item 30-4 at ¶¶ 1-2, the parking lot was "covered with snow . . . 2-3 inches deep," Docket Item 28-3 at ¶ 11; Docket Item 30-4 at ¶ 11. Shortly after she parked, Bender exited her truck, walked several steps toward the store, slipped on a patch of snow or ice, and fell backward. Docket Item 28-3 at ¶¶ 1, 4-6; Docket Item 30-4 at ¶¶ 1, 4-6. Bender did not see any ice on the ground before she fell, nor did she see any ice on the ground after she fell "other than the spot where she fell." Docket Item 28-3 at ¶¶ 7-8; Docket Item 30-4 ¶¶ 7-8.

But the parties—each supported by an expert meteorologist—disagree about whether there was a storm in progress when Bender fell.

Lowe's, supported by meteorologist Aaron Mentkowski, contends "that there was a winter snowstorm in progress at the time and location of [Bender's] incident." Docket Item 28-3 at ¶ 25 (citing Docket Item 28-4 at ¶¶ 8-9). More specifically, Mentkowski determined that (1) 4-5 inches of lake effect snow fell in the hours before Bender's fall; (2) "snow, ranging from light to heavy, continued to fall . . . through at least 9:54 a.m. that day"; (3) the temperature was about 23 degrees that morning; and (4) "winds were

---

[1] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party. *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011). The following facts are taken from Lowe's statement of undisputed facts, Docket Item 28-3; Bender's statement of undisputed facts, Docket Item 30-4; and the exhibits incorporated in the parties' filings. They are viewed in the light most favorable to Bender.

gusting at 33 miles per hour causing blowing snow" when Bender fell.  Docket Item 28-4 at ¶¶ 5-7.

But Bender's meteorologist, Kevin Williams, "concluded that there was no measurable precipitation occurring at the time and location" of Bender's fall.  Docket Item 30-4 at ¶ 29 (citing Docket Item 30-5 at ¶ 11).  Rather, he says, there were cloudy skies "with a couple of flurries in the vicinity" and winds blowing "at approximately 35 miles per hour" causing blowing snow.  Docket Item 30-5 at ¶ 5.  He determined that the temperature was about 22 degrees when Bender fell.  *Id.*

## **LEGAL PRINCIPLES**

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).  "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' *i.e.*, 'it is quite clear what the truth is,' and no rational factfinder could find in favor of the nonmovant."  *Id.* (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), then quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962)).  Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party."  *Id.*  "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence."  *Id.*

**DISCUSSION**

Lowe's asserts that it is entitled to summary judgment based on the storm-in-progress doctrine. Docket Item 28-5 at 2-3. Bender responds that summary judgment is inappropriate because there are "questions of fact as to whether there was a storm in progress at the time and location" of her fall. Docket Item 30-3 at 2. This Court agrees with Bender.

**I.     THE STORM-IN-PROGRESS DOCTRINE**

"Under New York law, when ruling on a tort action involving a plaintiff's fall on snow or ice, a special rule comes into play." *Curtis v. Speedway LLC*, 2023 WL 3995468, at *4 (W.D.N.Y. June 14, 2023) (quoting *Olejniczak v. E.I. du Pont de Nemours & Co.*, 79 F. Supp. 2d 209, 216 (W.D.N.Y. 1999)). The storm-in-progress doctrine provides that "a landowner has a reasonable time in which to address a storm-related snow or ice condition on its property subsequent to the cessation of the storm and is not required to take any corrective actions while a storm is still in progress." *Id.* (quoting *Reynolds v. Sead Dev. Grp.*, A.D.2d 940, 940, 684 N.Y.S.2d 361, 362 (3d Dep't 1999)).

In other words, "a property owner is under no duty to remove snow and ice while a storm is in progress," *Sobieraj v. United States*, 2020 WL 2115671, at *4 (W.D.N.Y. Mar. 12, 2020), *report and recommendation adopted*, 2020 WL 2113459 (W.D.N.Y. May 4, 2020) (citation omitted), but instead may wait to act until a "reasonable time" after the conclusion of the storm, *Curtis*, 2023 WL 3995468, at *4.[2] "Thus, in cases where

---

[2] "The purpose of the doctrine is 'to relieve the worker(s) of any obligation to shovel snow while continuing precipitation or high winds are simply re-covering the

4

plaintiffs have sued for injuries sustained from falling on snow or ice, New York courts have granted summary judgment in favor of the defendants if the evidence shows that a storm was in progress at the time of the plaintiffs' fall." *Id.* (collecting cases).

"Evidence of a storm in progress presents a *prima facie* case for dismissal of a negligence claim as a matter of law, and 'such evidence is especially persuasive when based upon the analysis of a licensed meteorologist.'" *Sobieraj*, 2020 WL 2115671, at *4 (quoting *Powell*, 290 A.D.2d at 345, 737 N.Y.S.2d at 27). "The storm[-]in[-]progress doctrine is not limited to situations where blizzard conditions exist; it also applies in situations where there is some type of less severe, yet still inclement, winter weather." *Curtis*, 2023 WL 3995468, at *4 (quoting *Olejniczak*, 79 F. Supp. 2d at 216). "Nevertheless, the storm-in-progress doctrine does not apply where only a trace amount of snow is present." *Gourley v. Yarmack*, 2023 WL 5625439, at *4 (E.D.N.Y. Aug. 31, 2023) (collecting cases).

## II.   WHETHER A STORM WAS IN PROGRESS

The parties' positions are easily summarized: Lowe's says there was a storm in progress when Bender fell, Docket Item 28-5, and Bender disputes that contention, Docket Item 30-3. Each side submitted an affidavit and report from a meteorologist in support of its position, Docket Items 28-4, 30-5, 30-7, and each side says that the other's meteorologist got it wrong, Docket Items 28-5, 31-1.

---

walkways as fast as they are cleaned, thus rendering the effort fruitless.'" *Sobieraj*, 2020 WL 2115671, at *4 (quoting *Powell v. MLG Hillside Assocs., LP*, 290 A.D.2d 345, 345, 737 N.Y.S.2d 27, 28 (1st Dep't 2002)).

5

There is substantial overlap between the analysis and conclusions of the dueling meteorologists—both professionals with decades of experience. Docket Item 28-4 at ¶ 1 (Mentkowski's qualifications); Docket Item 30-5 at ¶ 2 (Williams's qualifications). For example, both Mentkowski and Williams considered, among other data, (1) information sourced from the Buffalo-Niagara International Airport, (2) doppler radar imagery, and (3) various weather statements and messages. Docket Item 28-4 at ¶ 3; Docket Item 30-5 at ¶ 3. Both agree that between approximately 3:30 a.m. and 7:30 a.m. on the morning of the accident, 4-5 inches of lake effect snow accumulated in the area. Docket Item 28-4 at ¶ 5; Docket Item 30-5 at ¶ 5. Both agree that when Bender fell a couple hours later, temperatures were below freezing and winds were blowing at approximately 35 miles per hour, causing areas of blowing snow. Docket Item 28-4 at ¶ 7; Docket Item 30-5 at ¶ 5. And both agree that a winter weather advisory was in effect when Bender fell. Docket Item 28-4 at ¶ 7; Docket Item 30-5 at ¶ 5.

But the meteorologists differ in their analysis of the precipitation shortly before and at the time of Bender's fall between 9:30 a.m. and 10:00 a.m. and whether the conditions constituted a continuing storm. Mentkowski says that "a winter snowstorm [was] in progress" because "light to heavy" snow continued to fall until approximately 10:00 that morning.[3] Docket Item 28-4 at ¶¶ 6, 8. Williams says there were only "a couple of flurries" at that time, Docket Item 30-5 at ¶ 5, and that there was "no measurable precipitation" when Bender fell, *id.* at ¶ 11. So, he contends, "the data does

---

[3] Williams says that Mentkowski's finding that the lake effect snow fell until 7:30 a.m. suggests "that new snow accumulation ceased . . . at least two hours" before Bender's fall. Docket Item 30-5 at ¶ 10. But that mischaracterizes Mentkowski's report, which explicitly found that light to heavy snow continued to fall until about 10:00 a.m. Docket Item 28-4 at ¶ 6.

not . . . support the conclusion" that there was a winter snowstorm in progress.  *Id.* at ¶ 8.

Those contradictory reports raise a question of fact as to whether a storm was in progress when Bender fell.  *See, e.g.*, *Realtime Data, LLC v. Stanley*, 897 F. Supp. 2d 146, 153 (S.D.N.Y. 2012) ("[W]hen there are dueling experts, both of whom have put forward opinions in contradiction with each other, and when those opinions are important to resolution of a material factual dispute, summary judgment may not be appropriate.").  Lowe's arguments to the contrary are unavailing.

First, Lowe's argues that Williams's report and affidavit are "deficient because [Williams] did not submit any *certified* weather records to support his findings."  Docket Item 31-1 at 4 (emphasis in original).  But Williams and Mentkowski considered data from similar sources, *see supra* at 6, so the Court rejects that argument.  What is more, the sole case Lowe's cites for the proposition that "uncertified records" are "inadmissible" is easily distinguishable:  In that case, the plaintiff submitted "printouts . . . from a weather reporting website," *Ayala v. City of New York*, 198 A.D.3d 407, 152 N.Y.S.3d 308 (1st Dep't 2021)—a far cry from Williams's expert meteorologist report.

Second, Lowe's contends that Williams's findings "actually *confirm* the existence of a storm."  Docket Item 31-1 at 4-5.  More specifically, it points to Williams's findings that lake effect snow fell until 7:15 a.m. and that, at the time Bender fell, "snow flurries continued, winds were blowing . . . , the temperature was below freezing . . . , and a winter weather advisory remained in effect."  *Id.*

Lowe's correctly observes that "weather does not have to be a blizzard or a 'major winter storm' to constitute a 'storm' for purposes of . . . the storm-in-progress

7

doctrine." Docket Item 31-1 at 5 (collecting cases). "Nevertheless, the storm-in-progress doctrine does not apply where only a trace amount of snow is present." *Gourley*, 2023 WL 5625439, at *4 (collecting cases).

Here, there is no reasonable dispute that the lake effect weather conditions and several inches of snow accumulation in the early hours of December 11 constituted a storm. But the parties agree that those conditions ended hours before Bender fell, and their experts dispute the amount of precipitation at the time of the fall. If "a winter snowstorm [was still] in progress" because "light to heavy" snow continued to fall, as Mentkowski says, *see* Docket Item 28-4 at ¶¶ 6, 8, then the storm-in-progress doctrine will preclude liability. But if there was "no measurable precipitation" at that time, as Williams's report opines, *see* Docket Item 30-5 at ¶ 11, there was no storm in progress and Lowe's may be liable.[4]

In short, the dueling meteorologist reports raise a question of fact as to whether a storm was in progress when Bender fell. Because the Court cannot resolve that disputed question of fact, *see Realtime Data*, 897 F. Supp. 2d at 153, Lowe's is not entitled to summary judgment.

---

[4] It is true that a storm may be in progress even if there is a temporary "lull" or "break" in the stormy conditions. *See, e.g., Boynton v. Eaves*, 66 A.D.3d 1281, 1282, 888 N.Y.S.2d 253, 255 (3d Dep't 2009) ("[The plaintiff's] statement that it was not snowing at the time she fell is also unavailing, as a lull in the storm does not remove a case from the storm in progress doctrine." (citations omitted)); *Ioele v. Wal-Mart Stores, Inc.*, 290 A.D.2d 614, 614, 736 N.Y.S.2d 130, 132 (3d Dep't 2002) ("three-hour lull" was not a "cessation of the storm which would impose the duty on a defendant to clear snow and ice" (collecting cases)). But Mentkowski's report does not address the weather conditions in the hours after Bender's fall, *see* Docket Item 28-4, so this Court cannot determine whether Bender fell during a lull in an ongoing storm that ended later in the day.

8

**CONCLUSION**

For the reasons stated above, Lowe's motion for summary judgment, Docket Item 28, is DENIED. The case is referred back to Judge Foschio for further proceedings consistent with the referral order of January 4, 2021, Docket Item 3.

SO ORDERED.

Dated: November 15, 2023
        Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE